**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

WAYNE R. GOLD,

              Petitioner,

              v.                                Civil Action No. 8:11-cv-01675-AW

ENGINEERING CONTRACTORS INC., *et al.*,

              Respondents.

## MEMORANDUM OPINION

Pending before the court is Petitioner Wayne R. Gold's petition for injunctive relief pursuant to Section 10(j) of the National Labor Relations Act. A hearing was held on this matter on July 21, 2011. For the reasons stated herein, the Court will **GRANT** Petitioner's request for injunctive relief.

### I.      Factual Background

Wayne Gold, Regional Director of Region Five of the National Labor Relations Board ("Petitioner") brings this action on behalf of the Board under Section 10(j) of the National Labor Relations Act. Petitioner seeks injunctive relief, pending the resolution of a related matter before an Administrative Law Judge ("ALJ").

Respondent ECI is an engineering and mechanic contractor which performs construction, maintenance, and repair of HVAC and mechanical systems. Respondent ECI of Washington, LLC ("ECIW") is a limited liability company organized under the laws of the District of Columbia. Petitioner claims that on May 7, 2010, Respondent ECI repudiated the collective bargaining agreement that it had in place with Local 100 and failed to abide by the terms of the collective bargaining agreement that it had in place with Local 24. Additionally, Petitioner alleges that Respondent withdrew its recognition from Local 24 and Local 100 as the collective

bargaining representatives of ECI's employees. Petitioner further alleges that Respondent failed to bargain collectively and in good faith with Local 24 and Local 100. Finally, Petitioner asserts that Respondent unlawfully terminated at least 19 named employees because of their membership in Local 24 and Local 100.

Petitioner alleges that ECI told its employees on May 7, 2010 that it was "going non-union," and therefore, if employees wanted to maintain their positions with the company, they could not be members of a union. Allegedly, the employees, who chose to work non-union, were told that they now worked for ECIW (an entity purportedly created by the two owners of ECI).[1]

This case went before an Administrative Law Judge on July 11, 2011. According to Petitioner, while the decision from the ALJ is pending, Respondent refuses to recognize and bargain with the Union and fails to abide by the Collective Bargaining Agreements that they had instituted with Local 24 and Local 100. Additionally, Petitioner avers that Respondent refuses to reinstate the 19 employees that they terminated. Petitioner insists that injunctive relief is appropriate in this situation in order to prevent the Respondent from irreparably eroding employee support for the Union, to preserve the Union's ability to bargain effectively on behalf of its members, to prevent the employees from losing the benefits of good faith bargaining pending the Board's decision, and to prevent the final board Order in this case from being meaningless. (Doc. No. 1, at 4).

Contrarily, Respondent argues that 1) injunctive relief is inappropriate in this case, because of Petitioner's seven month delay in bringing the request, 2) injunctive relief is inappropriate because Petitioner fails to provide evidence of actual harm, and 3) injunctive relief is inappropriate because reinstatement would require ECIW to breach contracts with a number of

---

[1] Petitioner asserts that ECI and ECIW are a single integrated enterprise and a single employer within the meaning of the National Labor Relations Act, as they have common officers, ownership, directors, management, supervision, labor relations policies, premises, and facilities.

subcontractors causing further litigation and possible irreparable harm to ECIW.[2]  (Doc. No. 6, at 1).

## II.  Legal Standards

Sec. 10(j) of the National Labor Relations Act permits aggrieved parties to file for injunctive relief in a United States district court upon issuance of a complaint by the board.  29 U.S.C. § 160(j).  Before issuing a complaint, an agent of the board, the Regional Office, and the charged party are to cooperate in an investigation to determine whether the charge has merit.[3]

Furthermore, "[when] determining if a § 10(j) injunction should issue, the traditional four-part equitable test should govern what relief is 'just and proper'."  *Muffley v. Spartan Mining Co.* 570 F.3d 534, 542 (4th Cir. 2009).  "Under this traditional equitable standard, a district court determines whether to grant § 10(j) relief by weighing the following four factors: (1) the possibility of irreparable injury to the moving party if relief is not granted; (2) the possible harm to the nonmoving party if relief is granted; (3) the likelihood of the moving party's success on the merits; and (4) the public interest."  *Id.* at 541.  If the plaintiff presents a strong showing of irreparable harm granted the court denies injunctive relief, then the court must balance the likelihood of harm to the plaintiff and the defendant before making a final decision. *Scotts Co. v. United Indus. Corp.* 315 F.3d 264, 271 (4th Cir. 2002).  To demonstrate the likelihood of success, the Board needs only "produc[e] some evidence to support the unfair labor practice charges, together with an arguable legal theory." *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 460. (9th Cir. 1994)(en banc).

## III.  ANALYSIS

### A.  Parties' Preliminary Injunction Arguments

---

[2] Respondent alleges that the specific employees Petitioner wishes to reinstate only have skills in the areas of work that have been subcontracted, which would require breaching existing contracts or paying the reinstated employees to do nothing.

[3] *See* National Labor Relations Board Casehandling Manual, Part One: Unfair Labor Practice Proceedings ("CHM"), § 10010, *available at* http://www.nlrb.gov/publcations/manual.

Respondent opposes Petitioner's request for injunctive relief on several grounds. Respondent's first argument is that Petitioner's request for injunctive relief is untimely due to Petitioner's seven-month delay in seeking such relief. (Doc. No. 6, at 5). Furthermore, ECI contends that the court should deny Petitioner's request for injunctive relief because injunctive relief in this case will not cure potential injuries that have already occurred. *Id.* Additionally, Respondent argues that any request for injunctive relief on the eve of the hearing before the "ALJ" is inappropriate, because the purpose of injunctive relief is to prevent irreparable harm or supply emergent relief and, based on Petitioner's unexplained delay, these two requirements are absent. *Id.*

Respondent also argues that issuing injunctive relief forcing an employer to recognize bargaining agreements based on speculative harm is inappropriate. *Id.* at 7. Respondent insists that Petitioner fails to provide sufficient evidence of the harm the Union will incur absent injunctive relief. *Id.* Additionally, ECI alleges that Petitioner fails to show irreparable harm, given that a hearing before the ALJ has occurred on this matter and financial relief for terminated employees is available through the ALJ. According to Respondent, using the ALJ for financial relief is a more favored approach than reinstatement. *Id. at 9.*

Respondent also points out that injunctive relief is inappropriate because such relief would force ECI to breach existing contracts. *Id.* at 8. ECI claims that since a significant amount of the mechanical trade was sub-contracted, reinstating additional mechanical trade workers would force them to breach existing contracts. *Id.* Respondent maintains that this result would cause a significant waste of resources, potential legal liability, and devastation to their reputation in the marketplace, causing irreparable harm to the company while potentially rendering the ALJ's future decision a nullity. *Id.* at 9.

Petitioner replies to Respondent's oppositions with several arguments. Petitioner first addresses Respondent's timeliness argument by denying having unduly delayed filing for

injunctive relief. Petitioner's view is that the administrative procedures restricted Petitioner from filing for injunctive relief until around the end of February. (Doc. No. 7, at 13). Petitioner alleges that they concluded the investigation in February 2011 and not on November 1, 2010 as Respondent alleges. Because of the administrative procedures and internal board procedures, Petitioner holds that four months was a reasonable time to wait before filing for injunctive relief. *Id.* Moreover, Petitioner avows that even if the court finds undue delay, this finding should not warrant punishing wronged employees. *Id.* at 15.

Petitioner also claims that injunctive relief does not require a showing of actual irreparable harm, rather a display of a likelihood of irreparable harm. *Id.* at 16. Furthermore, Petitioner suggests that irreparable harm will occur absent injunctive relief, because 1) its absence would erode employee support for the Union; 2) damage the Union's ability to bargain effectively on behalf of the employees it represents, 3) allow employees to lose the benefits of good-faith bargaining pending the Board's decision; and 4) create a likelihood that the Board order will be a nullity. (Doc. No. 1, at 3). Petitioner points out that when balancing the equities, injunctive relief favors Petitioner and far outweighs any harm such relief might cause Respondent.

### i. Timeliness

First, Respondent's claim that Petitioner's undue delay warrants a denial of injunctive relief is unpersuasive. The record shows that Petitioner followed the necessary procedures for filing for injunctive relief by first filing the administrative charges and serving them on the Respondent in November 2010. (Docs. No. 1-4, 1-5). Thereafter, Petitioner was required to wait until the Board, the Regional Office, and the charged party completed the investigation to determine the merits of the charge. Petitioner could not file for injunctive relief until the Board issued the complaint, which occurred at the end of February. This means that Petitioner took only four months before filing for relief as opposed to the seven months that Respondent

suggests. This Circuit recognizes the reality of delay in Board proceedings due to the Board's large docket volume. *See Muffley*, 570 F.3d at 544 (finding Board's 18 months delay in filing for injunctive relief troubling, but nonetheless non-outcome determinative). Adlthough four months is not a swift turnaround, the lapse by itself does not warrant a denial of injunctive relief. Therefore, the Court concludes that the four-month delay is per se insufficient to warrant a denial of Petitioner's request for injunctive relief.

ii.    **Likelihood of Success**

The Fourth Circuit has held that the analysis for determining the likelihood of success on the merits of a claim for injunctive relief under 10(j) requires the Court to determine whether a showing has been made that there is reasonable cause that unfair labor practices have occurred. *Muffley,* 570 F.3d at 543 ([U]nder the traditional four-factor standard, the court must still determine the Board's likelihood of success on the merits, an inquiry that essentially parallels the 'reasonable cause' step). In *Frankl v. HTH Corp.*, 2011 WL 2725812 at *16 (9th Cir. July 13, 2011), the Ninth Circuit explained that "on a 10(j) petition, likelihood of success is a function of the probability that the Board will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that this Court would grant a petitioner enforcing that order, if such enforcement were sought." The Court went onto explain the low threshold that a petitioner has to establish to demonstrate a likelihood of success on the merits of a 10(j) petition, stating, "it remains the case—whether or not the Board itself approved the filing of the § 10(j) petition—that the regional director in a § 10(j) proceeding 'can make a threshold showing of likelihood of success by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory.'"*Id.*

Pursuant to 29 U.S.C. § 158(a)1-3 ("§158"), it is a violation to discriminate with regard "to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization" or "to refuse to bargain collectively with the

representatives of his employees." Petitioner's legal argument is that Respondent ECI and Respondent ECIW are a single-integrated enterprise. (Doc. No. 7, at 9). Petitioner contends that ECI created ECIW with the sole purpose of avoiding Respondent's obligations in the collective bargaining agreement it entered into with its employees. Petitioner asserts that Respondent terminated all employees affiliated with the Unions and only retained those employees who discontinued their membership. (Doc. No. 1, at 2). Furthermore, Petitioner claims that Respondent refused to recognize the Union as the exclusive collective bargaining representatives of the Union members and refused to bargain in good faith with the Union. *Id.* Based on the record and the oral argument during the hearing on this case, it does not appear that Respondent contests the fact that they terminated their union employees and failed to bargain with Local 24 and Local 100. From the record in this case, the Court believes that Petitioners have produced sufficient evidence to support their claim that Respondent has engaged in an unfair labor practice, in addition to presenting an arguable legal theory as to how Respondent has violated the National Labor Relations Act.

### iii. Possibility of Irreparable Injury

"Permit[ting an] alleged unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority is irreparable harm." *Frankl*, 2011 WL 2725812 at *22. Furthermore, "continuation of… unfair labor practice, failure to bargain in good faith, has long been understood as likely causing an irreparable injury to union representation." *Id.* at *23.

The Court does not agree that Petitioner has failed to show irreparable harm. Courts have recognized that the mere continuance of unfair labor practices over time constitutes irreparable harm favoring injunctive relief. *See id.* (observing that "[a]s time passes, the benefits of unionization are lost and the spark to organize is extinguished"). "The longer that [an] employer is permitted to benefit from a state of affairs that its own wrongdoing has brought about, the less likely it is that a final order . . . will be able to redress the wrongs that have been done and to

restore the status quo ante." *Barker v. A.D. Conner Inc.,* 2011 WL 2683164 at *16 (N.D. Ill. July 11, 2011) (citing *Bloedorn v. Francisco Foods*, Inc., 276 F.3d. 270, 286 (7th Cir. 2001)).

Here, as Petitioner declares, the ALJ will likely make a determination within the next three months. The ALJ's decision is only an advisory decision and, as Petitioner referenced, the Board will review the ALJ's opinion and thereafter make a final decision. This process may not produce a result until 2013.[4] The potentially large amount of time between the ALJ's decision and the Board's final determination supports the conclusion that irreparable harm will result if Respondent continues its alleged unfair labor practices. During the Board's decision process, union employees who were terminated are likely to seek employment elsewhere, consequently diminishing the Board's remedial power to reinstate those employees. A year and a half of potential unfair bargaining practices exercised by the Respondent would severely weaken the Board's remedial power. In light of the potential amount of time that may elapse between the ALJ's decision and the Board's final ruling, the Court finds that the balance of irreparable harm favors Petitioner. Although Respondent alleges that an injunction will force ECI to breach existing contract agreements, the Court agrees with Petitioner that any irreparable harm that ECI incurs as a result of its own violations of § 158 is better born by the company than union employees and the union itself.

### iv. Public Interest

Courts view granting injunctive relief as favoring public interest where there is a potential denial of good faith collective bargaining and wrongful termination of employees. "By halting this progression away from the status quo ante, interim relief will help to preserve the Board's remedial authority and in that way serve the collective bargaining process." *Bloedorn*, 276 F.3d at 300.

---

[4] In the hearing on this matter, Petitioner suggested that the Board's administrative process has been known to take up to a year and a half in typical cases.

The public interest supports a decision in favor of Petitioner in this case. Here, there are undisputed allegations of wrongful terminations and a refusal by Respondent to bargain in good faith with formerly recognized unions. Injunctive relief supports the public policy of protecting the Board's remedial power by enjoining Respondent from potentially engaging in continued violations and protecting the collective bargaining process until a final decision is made by the Board.

IV.    CONCLUSION

In light of the equitable factors that weigh heavily in Petitioner's favor, the Court **GRANTS** Petitioner's request for injunctive relief. The Court directs the parties to confer and file a joint proposed Order reflecting the spirit of this Opinion.


Date:   August 4, 2011                                    _____/s/_____
                                                          Alexander Williams, Jr.
                                                          United States District Judge